# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2315

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Antonio M. Slater, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 11, 2005
Filed: June 29, 2005 (corrected 7/6/05)

_____

Before LOKEN, Chief Judge, MORRIS SHEPPARD ARNOLD and MURPHY, Circuit Judges.

_____

LOKEN, Chief Judge.

Antonio Slater was the passenger in a car stopped by police officer Jeffrey Perry at a sobriety checkpoint in Independence, Missouri. During the stop, Officer Perry asked Slater for identification. Slater complied. When a computer check revealed an outstanding arrest warrant, Perry arrested Slater. A search incident to the arrest uncovered a loaded revolver in Slater's pocket. He was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2).

After the district court[1] denied Slater's motion to suppress the firearm as the product of an unlawful detention, he entered a conditional guilty plea and now appeals the denial of his motion to suppress. We affirm.

Officer Perry was the only witness to testify at the suppression hearing. His testimony regarding the events leading up to the seizure of Slater's firearm is not in dispute. At the checkpoint, Officer Perry asked the driver, Nicholas Jones, if he had been drinking. Jones replied that he had a couple drinks earlier in the evening. Perry then asked Jones and his two passengers, Slater and Jones's young son, to get out of the car. Perry took Jones to the field sobriety test location, while a civilian volunteer or another officer drove the vehicle to a nearby parking lot. After Jones passed the sobriety tests, Perry asked Jones if his adult passenger was a licensed driver. Jones said he did not know, so the two returned to where the passengers were waiting, and Perry asked Slater if he was willing to drive. Slater replied that he had no driver's license. Perry asked Slater for identification, and he produced a Missouri non-driver identification card. Perry's computer check of Slater revealed the outstanding warrant. After Slater was arrested and searched, Perry issued Jones three citations for an improperly registered motor vehicle, no insurance, and failure to have his driver's license with him. Jones then left the checkpoint in the car with his son.

On appeal, Slater argues that he was unreasonably seized and detained at the checkpoint in violation of the Fourth Amendment for two reasons: first, because Officer Perry's identity check of Slater "was in no way related to the administrative purpose that justified" the sobriety stop; and second, because the continued detention to question passenger Slater after Jones passed the sobriety tests exceeded the permissible scope of the stop. We disagree with both contentions.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable John T. Maughmer, Chief United States Magistrate Judge for the Western District of Missouri.

1. A recent Supreme Court decision confirms that Officer Perry's request for Slater's identification did not violate the Fourth Amendment even if it was unrelated to the sobriety stop. In Muehler v. Mena, 125 S. Ct. 1465 (2005), the police detained a female occupant of a house while they executed a warrant to search for weapons and evidence of gang membership. The Supreme Court reversed the Ninth Circuit's decision that the police violated her Fourth Amendment rights by asking unrelated questions about her immigration status during the detention:

> This holding, it appears, was premised on the assumption that the officers were required to have independent reasonable suspicion in order to question Mena concerning her immigration status because the questioning constituted a discrete Fourth Amendment event. But the premise is faulty. We have held repeatedly that mere police questioning does not constitute a seizure. Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage. As the Court of Appeals did not hold that the detention was prolonged by the questioning, there was no additional seizure within the meaning of the Fourth Amendment.

125 S. Ct. at 1471 (quotations omitted), citing Florida v. Bostick, 501 U.S. 419, 434 (1991), and INS v. Delgado, 466 U.S. 210, 212 (1984); see also Hiibel v. Sixth Judicial Dist. Ct., 124 S. Ct. 2451, 2458 (2004).

2. Turning to the second issue, Slater concedes, as he must, that the stop of Jones's car at a sobriety checkpoint and the additional brief detention for sobriety testing when Jones admitted he had been drinking did not violate the Fourth Amendment. See Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 447, 450-51 (1990). Thus, the suppression issue turns on Slater's principal argument, that Officer Perry by requesting Slater's identification and conducting the computer check unreasonably prolonged his detention at the sobriety stop. We conclude that this argument suffers from at least three fatal flaws.

First, Slater's argument is premised on the unfounded assumption that, as a passenger, he was detained while driver Jones took the field sobriety tests. It is true that, for Fourth Amendment purposes, passenger Slater was seized when he was ordered to exit the vehicle. See Maryland v. Wilson, 519 U.S. 408 (1997). But Wilson confirms that this momentary seizure was reasonable because its purpose was to protect the safety of the officer or civilian volunteer who moved the vehicle to a parking lot while Jones was tested. And, as in Wilson, Slater "was subjected to no detention based on the stopping of the car once he had left it." 519 U.S. at 415 n.3. Slater and Jones's son waited at the roadside for Jones's testing to be completed. Officer Perry testified that passenger Slater was free to leave at any time during the testing and that Perry had seen other passengers either walk away from a sobriety checkpoint or use their cell phones to call someone to pick them up. In these circumstances, there is nothing in the record to support the assertion that, during the period Jones was being tested, passenger Slater was detained, that is, that "a reasonable person would not have believed himself free to leave." United States v. McKines, 933 F.2d 1412, 1419 (8th Cir. 1991) (en banc).

Second, Slater's argument is premised on the erroneous assertion that the sobriety checkpoint stop was completed before Officer Perry asked Slater for his identification. Jones's admission that he had been drinking earlier that evening gave Officer Perry reasonable suspicion to extend the stop while Jones completed the sobriety tests. In other words, the minimal sobriety checkpoint stop had become a Terry stop, much like a Terry stop to determine whether the driver of a car observed weaving is intoxicated. See Terry v. Ohio, 392 U.S. 1 (1968). Though Jones passed the sobriety tests, Officer Perry decided to issue Jones three citations. Perry testified that he also asked Jones if his adult passenger was a licensed driver because, "if he had not been drinking, maybe it would be a good idea that he would drive just to relieve any suspicion if they were to be stopped later on." Jones said he did not know if Slater had a license, so the two went back to where the passengers were waiting. After Slater said he was not a licensed driver, Officer Perry asked to see his

-4-

identification, all prior to Officer Perry completing the stop by issuing Jones the three citations.

Third, numerous cases establish that Slater was not seized or detained merely because Officer Perry asked to see Slater's identification. See Florida v. Bostick, 501 U.S. 429, 435 (1991); United States v. McManus, 70 F.3d 990, 992 (8th Cir. 1995). Slater consented to the request, handing Officer Perry the non-driver identification card. Without question, in our view, Officer Perry reasonably considered that voluntary act as Slater's consent to a routine, thirty-second computerized records check, using equipment readily at hand. See generally Florida v. Jimeno, 500 U.S. 248, 251 (1991). Thus, Officer Perry's conduct that produced the information providing probable cause to arrest Slater for an outstanding warrant was not an unlawful seizure or detention of Slater. And even if it arguably extended, for a few minutes, the as-yet-uncompleted stop of driver Jones, Slater has no standing to raise that Fourth Amendment issue, nor is it relevant to his motion to suppress.

The touchstone of the Fourth Amendment is reasonableness. Officer Perry acted reasonably in stopping the vehicle driven by Jones at a sobriety checkpoint, in subjecting Jones to standard field sobriety tests, and in ordering Jones's passengers out of the car while it was moved to a nearby parking lot. After the sobriety testing, Officer Perry's decision to ask Slater whether he was licensed to drive the car was reasonably related to the sobriety stop. In any event, Perry did not seize or detain Slater by asking for his identification and, when Slater consented, doing a computerized record check which revealed an outstanding arrest warrant. Slater concedes that the search incident to his arrest was constitutionally reasonable. For these reasons, the district court properly denied his motion to suppress, and the judgment of the district court is affirmed.

_____